GRIFFIS, J.,
for the Court.
¶ 1. Lisa White was indicted in the Circuit Court of DeSoto County for the possession of a controlled substance. White filed a pre-trial motion to suppress the cocaine found on her during a “pat-down” search. The trial court granted White’s motion and, given the lack of evidence, subsequently dismissed the indictment. Aggrieved by the trial court’s ruling, the State filed this appeal. We find that the record contained substantial evidence to support the legality of the search. Accordingly, we reverse.
FACTS
¶ 2. On January 17, 2003, Lisa White was stopped by Officer Scott Fulwood at 9:30 p.m. because she did not have a tag light. Fulwood noticed the smell of alcohol when he approached the vehicle. It was a cold night, and Fulwood asked White to accompany him to his vehicle where he could administer a breathalyzer test. White registered below the legal limit. Fulwood continued to question White for approximately twenty minutes. Fulwood testified that White was “extremely fidgety” and “overly nervous.” Based on her nervous behavior, Fulwood asked White if he could search her car for narcotics and weapons. White consented to the search, and they got out of Fulwood’s patrol car.
¶ 3. Before searching White’s car, Ful-wood testified that he decided to search White for safety precautions. Fulwood conducted a “pat-down” search of White *765 for weapons. White became evasive when Fulwood attempted to search the inside pocket of her jacket. Eventually, White produced “a small case or pouch” from the pocket which contained a substance later to be determined as cocaine. The cocaine found in the jacket was the underlying cause of the indictment.
¶ 4. White was indicted for the possession of a controlled substance. Prior to trial, White moved to suppress the cocaine arguing that it was found due to an illegal search. A suppression hearing was held and only Officer Fulwood testified. The trial court found that the search was not reasonable given the interval of time that Fulwood waited to search White. The trial court granted the motion to suppress and ultimately dismissed the indictment with prejudice.
¶ 5. The State raises the following issues on appeal: (1) whether the trial court erred in suppressing the evidence obtained as a result of a search for officer safety, and (2) whether the trial court erred in dismissing the indictment.
DISCUSSION

I.Whether the State has the statutory authority to bring this appeal.

¶ 6. White argues that the State does not have standing to prosecute this appeal. The State may not appeal a criminal case except where specific statutory authority grants it the right to do so. State v. Parks, 415 So.2d 704, 705 (Miss.l982)(citing State v. Key, 93 Miss. 115, 46 So. 75 (1908)). The Mississippi statute controlling the right of the State to appeal in this case is Mississippi Code Annotated section 99-35-103(b)(Rev.2000) which provides, in pertinent part:
The state ... may prosecute an appeal from a judgment of the circuit court in a criminal cause in the following cases:
(b) From a judgment actually acquitting the defendant where a question of law has been decided adversely to the state ...; but in such case, the appeal shall not subject the defendant to further prosecution, nor shall the judgment of acquittal be reversed, but the supreme court shall nevertheless decide the question of law presented.
¶ 7. The State argues that the trial court erred in suppressing the evidence and subsequently dismissing the indictment with prejudice. Although White may not be subjected to further prosecution, the State claims that the trial court should be reversed.
¶ 8. Whether the trial court correctly applied the Terry precedent under these circumstances is a valid question of law. Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Accordingly, we now consider the merits of the issues raised on appeal by the State.

II. Whether the trial court erred in suppressing the cocaine found as a result of a search for officer safety.

III. Whether the trial court erred in dismissing the indictment.

¶ 9. The Fourth Amendment to the United States Constitution provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. Const, amend IV.
¶ 10. A warrant is not required for a law enforcement officer to briefly *766 detain an individual for questioning Anderson v. State, 864 So.2d 948, 950(¶ 7)(Miss.Ct.App.2003). Reasonable suspicion is all that is required to stop and frisk. Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). “The officer usually may pat the outer clothing of the individual who has been stopped to determine if a weapon is possessed.” Anderson, 864 So.2d at 950(¶ 7), citing Terry, 392 U.S. at 30, 88 S.Ct. 1868 (1968). “Although such stops and limited searches may be permissible under the particular circumstances at their inception, they may become violative of the Fourth Amendment by exceeding the permissible scope.” Id.
¶ 11. The trial court found that, under the totality of the circumstances, Officer Fulwood’s search was not reasonable since he conducted the search after spending twenty minutes questioning White in his vehicle. Therefore, the key question is whether reasonable suspicion existed after Fulwood’s twenty minute conversation with White.
¶ 12. Officer Fulwood’s suspicions were clearly not dispelled after questioning White. He testified that White continued to act “extremely fidgety” and “overly nervous” after she passed the breathalyzer test. Based on Fulwood’s experience, such behavior was not normal under the circumstances.
¶ 13. Officer Fulwood testified that he had genuine concerns for his safety. He stopped White at approximately 9:30 p.m. Fulwood was the only officer on the scene. His vehicle did not have a “cage” capable of containing White while he searched her vehicle. White would be unattended while Fulwood conducted the vehicle search. Fulwood testified that he was concerned about turning his back from White while searching her vehicle. Fulwood’s concerns were reasonable and valid.
¶ 14. The search of White was legal. Although the cocaine was not the point of Fulwood’s search in the first place, such chance discovery does not require suppression. Michigan v. Long, 463 U.S. 1032, 1050, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). Officer Fulwood did not discover the cocaine by exceeding the scope of the permissible search. He did not discover it by prying into objects which could not have reasonably held a weapon, such as a matchbox or small flat envelope. Fulwood stopped White because her tag light was out. White continued to act suspicious after she passed the breathalyzer test. Finally, White’s evasive behavior during the “pat-down” search furthered Fulwood’s suspicion prompting his search of her jacket pocket where he discovered the cocaine. Therefore, under the totality of the circumstances, the discovery and seizure of the cocaine were proper. The trial court erred in sustaining the motion to suppress and consequently dismissing the indictment. Accordingly, we reverse.
¶ 15. THE JUDGMENT OF THE DE-SOTO COUNTY CIRCUIT COURT IS REVERSED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER AND BARNES, JJ. CONCUR. KING, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY IRVING AND ISHEE, JJ.